# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KELLEY BROOKINS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Judge Joan B. Gottschall |
| v. ) | |
| ) | Case No. 11 C 2996 |
| CHICAGO TRANSIT AUTHORITY ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION & ORDER

Plaintiff Kelley Brookins' amended complaint alleges that she was denied a promotion by the Chicago Transit Authority ("the CTA") on the basis of gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and that the CTA has violated the Equal Pay Act, 29 U.S.C. § 206 (as amended). The CTA and Brookins have now filed cross-motions for summary judgment. For the reasons set forth below, the court denies Brookins' motion and grants the CTA's motion.

### I. BACKGROUND

The following facts are undisputed unless otherwise noted. Kelley Brookins began working with the CTA on April 29, 1986. She held a variety of positions, including Conductor, Motorman, Flagman, and Switchman, over the course of her twenty-two years with the CTA. A quick overview of her employment history shows that in 1994, she was promoted to a supervisor position, and between 1995 and 2003, Brookins worked as a Controller and a Manager for the Communications/Power Control Center. In 2004, Brookins became the Special Assistant to the CTA President. At various times, she

worked as the General Manager of the Forest Glen Garage, the Communications/Power Control Center, and the 77th Street Garage. At some point, Brookins also earned a master's degree in Business Administration.

In November 2009, Brookins was working as General Manager of Bus Operations at the 77th Street Garage; in this position, her immediate supervisor was Jeannette Martin, the Vice President of Bus Operations. That month, William Mooney, then the Chief Operating Officer of the CTA, announced his retirement. Martin was selected as his replacement, effective December 31, 2009; this, in turn, created a vacancy in the Vice President of Bus Operations position. Around this time, the CTA had planned layoffs of more than 1,000 employees. As a result of all of this activity, several senior management positions within the CTA were vacant. The CTA needed experienced people in the senior management positions, so Peter Ousley, the Chief of Staff, tasked both Martin and Gia Morris, the Vice President of Human Resources, with filling the open positions.

Brookins and Martin had a personal, friendly relationship. While these changes were taking place, but before Martin had been officially selected as the new Chief Operating Officer, Brookins met with Martin and Morris at a restaurant after work. Martin told Brookins that Brookins would be a good replacement for her and that there were not many people to choose from. The parties dispute precisely what was said—Brookins claims that Martin told her that Brookins was "the only logical candidate" to replace Martin as Vice President of Bus Operations, while Martin denies making this statement. In any event, although Martin considered recommending Brookins, she ultimately recommended a man named Earl Swopes for the Vice President position. Richard Rodriguez, the President of the CTA, accepted that recommendation. Swopes

became the new Vice President of Bus Operations, while Brookins was instead appointed to General Manager of the Control Center. Swopes had not even applied for the Vice President position.

The parties agree that Brookins possessed many admirable skills, including the organizational management skills needed to define, develop, and evaluate objectives, standards, and performance levels for assigned groups; the analytical skills necessary to review, assess, and evaluate data from various diverse sources and to generate effective solutions and competent decisions; and the ability to maintain amiable and effective working relations with CTA upper management, personnel, and external contacts. Still, Martin testified that she recommended Swopes for the position instead of Brookins because Martin believed that (1) the CTA needed an experienced General Manager, such as Brookins, in the Control Center; and (2) Earl Swopes was more qualified for the position of Vice President of Bus Operations than Brookins because he had worked in Bus Operations for more than thirty years.

Specifically, Martin testified that she believed Swopes possessed all of the education and experience needed to become Vice President of Bus Operations. The Vice President of Bus Operations must interact directly with the Manager of Operations, oversee training and instruction for bus operating personnel, and answer questions concerning bus operations, instruction, and safety issues. The Vice President is also responsible for a number of garage locations and the administration section of all garages. In addition, the Vice President oversees the Bus Service Management Group, as well as the Managers who monitor the Bus Service and Training and Instruction Departments.

Swopes had been employed with the CTA since 1980, and had received excellent evaluations for his work. Over the years, he had occupied numerous positions, including Bus Operator, Bus Service Supervisor, Bus Instructor, and Transportation Manager of Bus Operations. By contrast, Brookins had never served as a Bus Operator,[1] Bus Service Supervisor, Bus Instructor, or Transportation Manager of Bus Operations, although both Swopes and Brookins had served as General Manager of Bus Operations. Brookins believes that she gained "extensive managerial experience" in bus operations when she was a General Manager of Bus Operations from 2004 to 2005 and again from 2007 to 2010; likewise, she believes she gained the necessary experience in bus service management when she was the General Manager of Bus Operations at the 77th Street Garage from 2007 to 2009. She also claims to have gained managerial experience in training and instruction when she was the General Manager of the Control Center from 2005 to 2007. In addition, Brookins argues that the job description for the Vice President position did not require the Vice President to have prior experience as a bus operator, bus instructor, or bus supervisor.

Brookins argues that she has been discriminated against on the basis of her gender. In support, she points to three statements by Martin. First, Brookins claims (and Martin denies) that Martin told Brookins that President Rodriguez and Chief of Staff Ousley would "eat her up alive." Second, Brookins claims (and Martin denies) that Martin made negative remarks about women being on their menstrual period and made allusions to their behavior at work. Finally, Brookins claims (and Martin denies) that

---

[1] Brookins objects, claiming that she drove a bus in 2005 as part of an accelerated management training program. (*See* Pl.'s Resp. to Def.'s Am. SOF ¶ 9.) Even if the court accepts this as true, Brookins does not dispute that she never held any of these particular positions within the CTA, nor has she provided factual support for the notion that her 2005 training was equivalent to working as a Bus Operator.

Martin told Brookins she would not recommend a woman named Sonneta Lucy for a General Manager position, because although Lucy was smart, she "took everything so personal[ly]"—conduct that Martin associated as being "female." Brookins' two-count amended complaint alleges that she was passed over for the promotion to Vice President of Bus Operations because of her gender, and that she was paid less than Swopes despite the fact that they have performed the same duties since January 2010. Both parties have moved for summary judgment.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, the court will grant summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In particular, the court will grant a motion for summary judgment "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

At the summary judgment stage, "a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party." *Keri v. Bd. of Trustees of Purdue Univ.*, 458 F.3d 620, 628 (7th Cir. 2006). With cross-motions for summary judgment, the court treats each motion separately in determining whether judgment should be entered pursuant to Rule 56. *See Marcatante v. City of Chi., Ill.*, 657 F.3d 433, 439 (7th Cir. 2011). "A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine

issue of triable fact." *Keri*, 458 F.3d at 628 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986)). Doubts about the existence of a material fact "should be resolved in favor of the nonmoving party and summary judgment ought to be denied." *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994).

### III. ANALYSIS

Brookins has alleged that the CTA discriminated against her by failing to promote her and paying her less based on her gender. Before the court can delve into the merits of these arguments, however, the court must address deficiencies in the summary judgment pleadings.

**A. Issues with Summary Judgment Pleadings**

The court begins with the deficiencies on Brookins' side of the aisle. First, Brookins largely attempts to support her motion for summary judgment with statements of fact that cite to her own affidavit. "Provided that the evidence meets the usual requirements for evidence presented on summary judgment—including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial—a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material facts." *Payne v. Pauley*, 337 F.3d 767, 772-73 (7th Cir. 2003) (further noting that while reasonable inferences are permissible, they must be "grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience."). Affidavits that rest upon mere allegations or conclusory statements, however, are not sufficient to defeat summary judgment.

Here, Brookins' affidavit contains some facts that clearly fall within her personal knowledge, such as how long she has been employed by the CTA and when she received certain promotions. These statements suffice to create genuine issues of material fact if challenged by competing evidence. But other statements are entirely conclusory, and are not deserving of credence. For instance, Brookins simply states that her job experience and qualifications met the April 2009 job description for the Vice President position, "as evidenced by [her] work record." (*See* Brookins Decl. ¶ 11, ECF No. 37.) In support, she references the CTA's position description for the Vice President of Bus Operations,[2] which does nothing to provide specific factual support for this conclusory statement. Likewise, she states that she possesses various organizational and management skills, analytical skills, a "suitable temperament and disposition," etc., all of which statements are "evidenced by her work record." (*See, e.g.*, *id.* ¶¶ 15-22.) Her self-evaluation, unsupported by specific evidence, cannot defeat summary judgment. *See Gustovich v. AT&T Commc'ns, Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) ("An employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability."); *see also Butts v. Aurora Health Care, Inc.*, 387 F.3d 921, 924-25 (7th Cir. 2004) (where conclusory statement that employee was less qualified than those who had been promoted had additional support in the record, including an acknowledgement by the employee that a number of those promoted had more experience, and deposition testimony by others which established "in great detail the

---

[2] Brookins may be attempting to cite to her own resume—she cites to "Exhibit B," but the citation is not clear, as the affidavit was revised and filed more than once together with different exhibits. (*Compare* Brookins Decl. ¶ 14, ECF No. 37, *with* Brookins Decl. ¶ 14, ECF No. 39-5 (adding language indicating that Brookins had driven a bus in 2005.) Brookins' resume is Exhibit B of the Appendix to the CTA's statement of facts. Regardless, the resume is not the type of documentary support which would suffice to show that Brookins was qualified for the Vice President position. First, the resume is a self-prepared document, just like the affidavit; and second, Brookins failed to draw any connection between the specific skills and strengths required in the job description and her employment history.

specific work experience" of the other candidates, no additional documentary evidence was needed). For this reason, the court has disregarded Brookins' statements of fact ("SOF") ¶¶ 11, 15, 16, 19, 20, and 21.[3]

Brookins also neglected to file a reply in support of her motion for summary judgment, and she did not file any response to the CTA's statement of additional facts. The court could treat Brookins' failure to respond to the CTA's statement of additional facts as an admission. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the nonmovant as mandated by the local rules results in an admission."). However, the CTA's additional facts are nearly identical to the statement of undisputed facts it provided in support of its own motion for summary judgment. (*Compare* Def.'s Am. SOF ¶¶ 9-30, ECF No. 29, *with* Def.'s Statement of Add'l Facts ¶¶ 1-22, ECF No. 40.) In the interest of justice, the court has assumed that Brookins' responses to the CTA's statements of fact are equally applicable to the CTA's additional facts, and has relied upon those responses in making its determination as to what facts are genuinely in dispute.

The court further notes that Brookins' statement of additional facts, made in response to the CTA's motion for summary judgment, contains almost no citation to the record. (*See* Pl.'s Statement of Add'l Facts ¶¶ 1-28, ECF No. 38-1.) The court could strike all of these additional facts as being improperly supported, but as they are largely identical to Brookins' own statement of facts, the court will instead treat Brookins' "statement of additional facts" as if they were supported by the record citations provided with the corresponding statements of fact from Brookins' summary judgment motion. To

---

[3] Although the same problem exists with respect to Brookins' SOF ¶¶ 17, 18, and 22, the CTA has admitted these facts and the court accepts these admissions.

the extent that there are new facts included in Brookins' statement of additional facts, these facts have been disregarded. (*See* Pl.'s Statement of Add'l Facts ¶¶ 14, 24, 27, and 28.)

The CTA's pleadings, while not perfect, are less egregious. The court first notes that without obtaining leave of court, the CTA filed a "Reply to Plaintiff's Response to Amended Rule 56.1 Statement of Material Undisputed Facts." No such reply is contemplated by the Local Rules, and the reply has been disregarded in its entirety. *See Pulliam v. City of Chi.*, No. 08 C 7318, 2010 WL 3238837, at *4 n.2 (N.D. Ill. Aug. 12, 2010); *Cent. States, Se. & Sw. Areas Pension Fund v. Sara Lee Bakery Grp.*, 660 F. Supp. 2d 900, 908-09 (N.D. Ill. 2009). As to the CTA's substantive response to Brookins' statement of facts, the CTA purports to "admit" various facts while attempting, without pinpointing the differences, to add new or different facts. (*See* Def.'s Resp. to Pl.'s Rule 56.1 SOF ¶¶ 1, 2, 12.) These additional facts cannot be introduced in a response, and the underlying fact set out by Brookins was deemed admitted. Having now spent an enormous amount of time on these ancillary issues, the court can finally turn to the merits.

**B. Title VII**

In Brookins' motion for summary judgment—which contains less than three pages of substantive argument, lacks any meaningful citation to caselaw, and is rife with typographical errors—Brookins claims that she was not promoted to the Vice President position despite being more qualified than Swopes, in violation of 42 U.S.C. § 2000e-2. In the CTA's motion for summary judgment, it argues that Brookins was less qualified for the Vice President position than Swopes, and that she has not produced any

competent evidence to establish her qualifications. The court agrees with the CTA as to the latter point, and grants summary judgment in the CTA's favor.

Here, Brookins is attempting to establish her failure-to-promote claim using the indirect method of proof under the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Thus, Brookins must first make out a *prima facie* case of discrimination by showing that (1) she was a member of a protected class; (2) she applied and was qualified for the position; (3) she was rejected for the position; and (4) the position was given to a person outside the protected class who was similarly or less qualified than she. *See Stockwell v. City of Harvey*, 597 F.3d 895, 901 (7th Cir. 2010). Only after Brookins establishes her *prima facie* case does the burden shift to the CTA to "articulate a legitimate, non-discriminatory reason for the adverse employment action." *See South v. Ill. Envtl. Prot. Agency*, 495 F.3d 747, 751 (7th Cir. 2007). If the CTA can do so, the ultimate burden shifts back to Brookins to present evidence showing that the CTA's purported reason for the failure to promote was pretextual. *Id.*

As a female, Brookins is a protected class member. The court will presume that she applied for the promotion, as the parties agree that Brookins and Martin specifically discussed who would succeed Martin as the Vice President of Bus Operations before Martin made her recommendation to the President. And certainly Brookins was passed over for the Vice President position. The two questions that remain, then, are whether Brookins was qualified for the position and whether Swopes was similarly or less qualified than she.

As the Seventh Circuit has often said, summary judgment is "the 'put up or shut up' moment in litigation," which means that the "non-moving party is required to marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Brookins' own motion (which is identical in all material respects to her response to the CTA's motion) is of little help to her, as it merely provides the blanket assertion that Brookins "met all the employer's criteria for education and experience as set forth in the job description." (Pl.'s Mem. in Supp. of Mot. for Summ. J. at 6.) Not only does this assertion appear to rely in large part upon her own unsupported evaluation of her skills and attributes—and as this court has already explained, her affidavit on these issues is insufficient to create an issue of material fact—but Brookins has done nothing to connect the dots between her particular experience and the job description. For instance, she claims that she has managerial experience in training and instruction based on her experience as a General Manager in the Control Center, but she has not described her specific duties in that role so as to establish that she satisfies the requirement. This lack of specific, factual support proves fatal to Brookins' Title VII claim, because Brookins cannot make out a *prima facie* case of discrimination.[4]

**C. Equal Pay Act**

For Brookins to make out a *prima facie* case for a violation under the Equal Pay Act, she does not have to prove discriminatory intent, but she does have to establish by a preponderance of the evidence that "(1) higher wages were paid to a male employee, (2)

---

[4] The CTA's motion focuses on the fourth prong of the *prima facie* case, arguing that Brookins cannot establish that Swopes was similarly or less qualified than she. While there is no question that Swopes had substantial experience, the court need not decide this issue because the court relies instead on Brookins' failure to establish her own qualifications. For the same reason, the court does not address the CTA's arguments relating to pretext.

for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." *Warren v. Solo Cup Co.*, 516 F.3d 627, 629 (7th Cir. 2008) (internal quotation marks and citation omitted). Although Brookins alleges that she performed Swopes' duties and was paid a lesser salary, her motion for summary judgment is silent on the facts and circumstances she would need to establish to make out her *prima facie* case. Brookins simply declares that "she performs substantially similar work" to Swopes, or that "Martin relied upon Brookins to perform tasks assigned to Swopes['] job title and she was not compensated with Vice President pay." (*See* Pl.'s Mem. in Supp. of Mot. for Summ. J. at 2, 7.) Brookins provides no evidence in support. Indeed, no facts were introduced in the summary judgment pleadings to support this claim—for instance, the court has no idea what duties Swopes and Brookins performed after their respective promotions, why Brookins believes her duties are the same as Swopes' duties, how often Brookins was asked to perform these vice-presidential duties by Martin, or how Brookins' and Swopes' compensation differ.[5] As already noted, summary judgment is the time to "put up or shut up." *Goodman*, 621 F.3d at 654. Without any facts to support Brookins' claim that the two positions required "substantially similar skill, effort and responsibilities" and were "performed under similar working conditions," this claim must fail.

---

[5] Although Brookins argues that Swopes earned $31,000 "more" upon his promotion, (*see* Pl.'s Mem. in Supp. of Mot. for Summ. J. at 6), this fact was not established in any Brookins' statements of fact.

## IV. CONCLUSION

Brookins has not established a *prima facie* case of discrimination under Title VII or a violation of the Equal Pay Act. The court therefore denies Brookins' motion for summary judgment and grants the CTA's motion for summary judgment. The case is dismissed.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 14, 2012